# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0546-20

IN THE MATTER OF
D.J.

_____

Submitted October 21, 2021 – Decided November 3, 2021

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. 0217-XTR-2020-1.

Adam M. Lustberg, attorney for appellant D.J.

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

D.J. appeals from the Law Division's September 9, 2020 decision to grant a law enforcement officer's petition for a final extreme risk protective order (FERPO) that compelled D.J. to surrender his firearms. We affirm.

By way of background, the Extreme Risk Protective Order Act of 2018 (the Act), N.J.S.A. 2C:58-20 to -32,

> creates a two-stage process for issuing temporary and final orders to remove a person's firearms and ammunition, firearms purchaser identification card, handgun purchase permit, and handgun carry permit. N.J.S.A. 2C:58-23 (authorizing [the issuance of a temporary extreme risk protective order] TERPO); N.J.S.A. 2C:58-24 (authorizing [the issuance of a] FERPO). The court first decides, based on an ex parte documentary record, if it will issue a temporary order to remove firearms. See N.J.S.A. 2C:58-23. Then, after a plenary hearing, the court decides if it will issue a final order to remove firearms indefinitely. See N.J.S.A. 2C:58-24.
>
> [In re D.L.B., ___ N.J. Super. ___ (App. Div. 2021) (slip op. at 3).]

To obtain a TERPO, the petitioner must allege that "the respondent poses a significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm." N.J.S.A. 2C:58-23(a). The court "shall issue the order if [it] finds good cause to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm." N.J.S.A. 2C:58-23(e).

After issuing a TERPO, the court forwards the TERPO and information about the FERPO hearing to the petitioner. N.J.S.A. 2C:58-23(i)(1); N.J.S.A.

2C:58-24(a). "If the court finds by a preponderance of the evidence at the hearing that the respondent poses a significant danger of bodily injury to the respondent's self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, the court shall issue" a FERPO. N.J.S.A. 2C:58-24(b).

Here, D.J.'s wife, H.J., called 911 to report that she and D.J. had argued over his excessive drinking. When the police arrived at the home, H.J. and the couple's two adult sons told them that after the argument, D.J. went into the basement and then left the house. He later returned, entered the basement, and exited the house again. After D.J. left, the sons looked through the basement and noticed that D.J.'s shotgun and 9mm pistol cases were out of the safe. The pistol's safety was off and there were two loaded magazines nearby. One of D.J.'s sons told the police "he was afraid because of the threats his father had made a couple months ago to shoot the family." H.J. and the other son also said they were afraid of D.J. due to his alcohol abuse.

One of D.J.'s sons gave D.J.'s weapons and ammunition to the police, who secured a TERPO from the municipal court. The Law Division subsequently scheduled the FERPO hearing for September 9, 2020.

Pursuant to Administrative Directive #12-20, "Principles and Protocols for Virtual Court Operations During the COVID-19 Coronavirus Pandemic – (1) Methods of Conducting Remote Court Events; (2) Access to the Public Record; and (3) Posting of Events Guidance" (April 27, 2020) (the Directive), a court may conduct a hearing remotely "[i]n all matters where the participants consent . . . ." Accordingly, the court held D.J.'s FERPO hearing by Zoom.

At the beginning of the hearing, the court ensured that D.J. consented to the remote hearing by engaging in the following colloquy with him:

> THE COURT: I want to make sure, [D.J.], are you consenting to proceeding virtually, that this is via Zoom? Are you consenting --
>
> [D.J.]: Yes.
>
> THE COURT: -- to having this proceeding done via Zoom on the video screen?
>
> [D.J.]: Yes, Your Honor.
>
> THE COURT: You have no objection to proceeding in this way, correct?
>
> [D.J.]: Yes, right.
>
> THE COURT: All right.

D.J. represented himself at the hearing. He called H.J. and one of his sons as witnesses. He never asked for an interpreter, never sought clarification of

A-0546-20

any of the court's questions, and fully responded to each inquiry posed to him by the court and during cross-examination.

At the conclusion of the hearing, the trial court rendered a detailed oral decision granting the FERPO. The court subsequently filed an equally thorough written amplification of its findings of fact and conclusions of law pursuant to Rule 2:5-1(b). In its written decision, the court explained that it issued the FERPO "based upon the prior incidents of domestic violence, the possession of weapons, [D.J.'s] history of alcohol abuse[,] and his threats to use his weapons against his family. These actions are not mere errors in judgment, they are red flags."

On appeal, defendant does not challenge the trial court's findings of fact or conclusions of law. Instead, he raises the following two contentions for the first time:

> POINT I
>
> THE COURT'S FAILURE TO INQUIRE IF THE APPELLANT WOULD BENEFIT FROM THE AID OF A COURT APPOINTED INTERPRETER VIOLATED APPELLANT'S FUNDAMENTAL DUE PROCESS RIGHTS.
>
> POINT II
>
> CONDUCTING THE PROCEEDING VIRTUALLY DUE TO THE COVID-19 PANDEMIC WITHOUT

A-0546-20

THE KNOWING AND INFORMED CONSENT OF THE APPELLANT VIOLATED APPELLANT'S RIGHT TO HAVE THIS MATTER HEARD IN PERSON.

We have considered D.J.'s contentions in light of the record and the applicable law and conclude they are without sufficient merit to warrant extended discussion. D.J. offered no evidence that he could not speak or understand English. The hearing transcript demonstrates that D.J. fully participated throughout the entire proceeding and was able to respond to each question the court and opposing counsel asked him. As the trial court stated in its amplified findings, D.J. "engaged with questions not only at length, but with great depth." Thus, D.J. presented no basis for the assignment of an interpreter and the court did not err by failing to appoint one.

The trial court also properly conducted the hearing virtually using Zoom. Before the hearing began, the judge twice asked D.J. if he consented to this procedure. He replied affirmatively both times. Because the court fully complied with the requirements of the Directive, D.J.'s contention to the contrary plainly lacks merit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

6